IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANTHONY LESTER SELLERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 7:14-cv-1971-RDP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

Plaintiff, Anthony Lester Sellers, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Plaintiff timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was forty-seven years old at the time of the Administrative Law Judge's ("ALJ") decision. He has a tenth-grade education, as well as past relevant work as a machinist for 21 years. (Tr. 135).  Plaintiff claims that he became disabled on September 16, 2008, as a result of depression, anxiety, joint fatigue, arthritis in knees, restless leg syndrome, and back problems. (Tr. 134).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.

2001).  The ALJ will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in SGA, the ALJ moves on to the next step.

The second step requires the ALJ to consider the combined severity of the claimant's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the ALJ to consider whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the ALJ will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the ALJ to determine whether the claimant has the RFC to perform the

requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent him from performing his past relevant work, the ALJ will make a finding of not disabled. *See id.*

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether the claimant can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the ALJ will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the ALJ will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. 41). The ALJ further determined that Plaintiff has not engaged in SGA since the alleged onset of his disability. (*Id.*). According to the ALJ, Plaintiff's depression, hypertension, history of multiple traumas, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*). However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 42). The ALJ determined that Plaintiff has the following RFC:

> [T]o perform light, unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to no climbing of ropes, ladders, or scaffolds; no more than occasional climbing of ramps and stairs; no more than occasional stooping, crouching, crawling, or kneeling; no work at unprotected heights; no work with hazardous machinery; no more than frequent interaction with co-workers and supervisors; and no more than occasional contact with the general public.

(Tr. 43-44).

According to the ALJ, Plaintiff is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education," as those terms are defined by the regulations. (Tr. 47-48). The ALJ did not deem transferability of job skills a determining factor. (Tr. 48). The ALJ used the Medical-Vocational Rules to support his finding that Plaintiff is "'not disabled,' whether or not [Plaintiff] has transferable job skills." (*Id.*). The ALJ found that Plaintiff has the RFC to perform some light work, which has been impeded by "additional limitations" from a full-range of such work. (*Id.*). Even though Plaintiff cannot perform the full range of light work, the ALJ relied on the vocational expert's ("VE") testimony to find that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as sorter, mail sorter, and electrical accessory assembler. (*Id.*). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 16, 2008, through the date of this decision." (Tr. 49).

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the ALJ, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This court gives deference to the factual findings of the ALJ, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

This court may not decide facts, weigh evidence, or substitute its judgment for that of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357

F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the proof preponderates against the ALJ's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Plaintiff raises only one issue on appeal. He contends that the Appeals Council of the Social Security Administration ("Appeals Council") should have considered an opinion he submitted to them from his treating physician and reversed the ALJ's decision denying him benefits.

The ALJ issued his opinion on March 19, 2013. Plaintiff then requested review by the Appeals Council. He submitted additional evidence from his treating physician, Dr. Christensen, including a Physical Medical Source Statement ("MSS") dated May 8, 2013, two months after the ALJ's denial decision. (Tr. 33-35). Dr. Christensen opined Plaintiff could walk only one to

two blocks at a time, sit for only fifteen minutes at a time and two hours in an eight-hour workday, stand for only five minutes at a time and less than two hours in an eight-hour workday, and lift and carry only up to twenty pounds occasionally. (Tr. 29). Dr. Christensen noted Plaintiff was taking opioids that would completely prevent him from working. (Tr. 28). He indicated Plaintiff would be off task 25% or more due to his symptoms and was unable to do even "low stress" work. (Tr. 31). Dr. Christensen indicated Plaintiff needed multiple, unscheduled breaks each hour and would miss more than four days of work a month. (Tr. 29, 31). Dr. Christensen cited a decreased range of motion of the cervical spine as the only clinical finding to support his opinion that Plaintiff suffered these disabling limitations. (Tr. 28).

The Appeals Council denied review of Plaintiff's claim on May 19, 2013, stating that it had considered the additional evidence but that it did not provide a basis for changing the ALJ's decision. (Tr. 2). The Appeals Council further stated with regard to Dr. Christensen's opinion:

> We also looked at the Medical Records from E. Christensen, M.D., dated from April 22, 2013 to February 7, 2014; and the Physical Medical Source Statement from Dale Christensen, M.D. dated May 8, 2013. The Administrative Law Judge decided your case through March 19, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 19, 2013.

(*Id.*).

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b),

6

416.1470(b). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is . . . subject to judicial review . . . ." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

As an initial matter, to the extent Plaintiff argues the Appeals Council should have provided a more detailed analysis with regard to its decision that it would not consider the opinion of Dr. Christensen, that position is without merit. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014) (holding Appeals Council not required to provide a detailed discussion of a claimant's new evidence when denying a request for review; decided based on language in the Appeals Council's order substantially similar to that used by the Appeals Council here). However, this court must decide whether Dr. Christensen's MSS was chronologically relevant to the time period considered by the ALJ and whether it constituted material evidence, in order to determine whether the Appeals Council erred in denying review. *See Ingram*, 496 F.3d at 1261.[1]

The Eleventh Circuit has recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may still be chronologically relevant. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983), superseded on other grounds by statute, 42 U.S.C. § 423(d)(5) (considering a treating physician's opinion even though "he did not treat the claimant until after the relevant determination date"). In *Washington v. Commissioner*, the Eleventh Circuit recently held that the Appeals Council committed legal error when it refused to consider

---

[1] There is no question that the MSS was "new" evidence because Dr. Christensen did not complete the MSS until after the hearing. (Tr. 8-14; 28-32).

additional evidence that was submitted by the claimant after the ALJ's denial of benefits. 806 F.3d 1317, 1323 (11th Cir. 2015). That new evidence included materials from Dr. Wilson, a psychologist who examined the claimant on one occasion approximately seven months after the ALJ's decision. *Id.* at 1319. Dr. Wilson concluded that the claimant had extreme "mental disturbances and cognitive limitations" and it was "highly unlikely" that he would be able to maintain any type of job. *Id.* The Eleventh Circuit found that, although Dr. Wilson's opinion regarding the claimant's limitations post-dated the period considered by the ALJ, the opinion was still chronologically relevant to the period considered by the ALJ for two reasons: 1) the doctor knew the claimant had experienced hallucinations during the period of time prior to the ALJ's decision based on the claimant's statement to him that he had experienced hallucinations throughout his life, and 2) the doctor had reviewed the claimant's mental health treatment records from the period before the ALJ's decision which showed that he "repeatedly" reported experiencing auditory and visual hallucinations. *Id.* at 1322-23. The Eleventh Circuit concluded that, although Dr. Wilson's examination and opinion occurred after the ALJ's decision, in the "specific circumstances of this case," the consultative examiner's opinion was chronologically relevant. *Id.*

The Commissioner argues that *Washington* is distinguishable.  In *Washington*, a physician had reviewed the claimant's mental health treatment records from the relevant period. Those records showed that the claimant "repeatedly" reported experiencing auditory and visual hallucinations.  Here, the ALJ opined that there was no evidence from the relevant time period that Plaintiff "repeatedly" experienced neck pain or limited range of motion of the neck during the relevant period.  The court disagrees.  Dr. Christensen appeared to base his MSS opinion on

8

Plaintiff's neck pain, listing a decreased range of motion of the cervical spine as the only clinical finding to support his opinion. (Tr. 28).

In the MSS, Dr. Christensen specifically noted Plaintiff's neck pain radiated down both arms, resulting in numbness, and his neck pain exacerbated his depression and anxiety. (Tr. 28, 31). Among the material submitted by Plaintiff to the Appeals Council is a progress note by Dr. Christensen dated January 31, 2013 (which was during the period considered by the ALJ but was not submitted until after the ALJ's decision), wherein Dr. Christensen had also noted that upon examination, Plaintiff had limited range of motion in his neck and experienced tenderness in his neck. (Tr. 268). Dr. Christensen further stated on that earlier date, "[Plaintiff] is still having significant pain in his neck and back. His neck is keeping him from working." (*Id.*). However, Robert MacGregor, M.D., examined Plaintiff in February 2011, and noted Plaintiff had no abnormalities on examination of the neck, including normal range of motion of the neck. (Tr. 182-83). On January 24, 2013, Bruce W. Romeo, M.D., examined Plaintiff and reported no abnormalities on examination of the neck, including normal range of motion. (Tr. 248, 251). An x-ray of Plaintiff's cervical spine on January 24, 2013, showed no abnormalities. (Tr. 254). Even though Dr. Christensen saw Plaintiff before the ALJ's decision, none of his progress notes considered by the ALJ showed Plaintiff complained of neck pain. (Tr. 219, 222, 225, 228, 231, 234, 237, 240, 243). Dr. Christensen's examination of Plaintiff's neck also showed no abnormalities. (Tr. 221, 224, 227, 230, 233, 236, 239, 242, 244). Indeed, Dr. Christensen noted Plaintiff was "doing well" on current medication and did not have any complaints, let alone neck pain, in many of his progress notes during the period considered by the ALJ. (Tr. 219, 222, 225, 231). Thus, according to the Commissioner, because the evidence during the period considered by the ALJ did not show Plaintiff had "repeated" complaints of neck pain, the post-ALJ opinion

that was based on Plaintiff's neck pain is not chronologically relevant to the period considered by the ALJ.

On the issue of chronological relevance, the Commissioner focused on the fact that there was evidence that the plaintiff in *Washington* "repeatedly" complained of hallucinations during the relevant time period. The Commissioner distinguished *Washington* from this case based on his view that Plaintiff did not "repeatedly" complain of neck pain in the relevant time period. But *Washington* is not so easily distinguished. This court finds the MSS from Dr. Christensen was chronologically relevant to the period considered by the ALJ—September 16, 2008 through March 19, 2013—because it is consistent with findings that Dr. Christensen made during that earlier time period. As noted, Dr. Christensen appeared to base his MSS opinion on Plaintiff's neck pain, listing a decreased range of motion of the cervical spine as the only clinical finding to support his opinion. (Tr. 28). In Dr. Christensen's progress note dated January 31, 2013 (which was during the period considered by the ALJ but was not submitted until after the ALJ's decision), Dr. Christensen had also noted that upon examination, Plaintiff had limited range of motion in his neck and experienced tenderness in his neck. (Tr. 268). Dr. Christensen further stated on that earlier date, "[Plaintiff] is still having significant pain in his neck and back. His neck is keeping him from working." (*Id.*). Thus, Dr. Christensen's progress note of January 31, 2013, is consistent with his MSS submitted four months later and links the conclusions the physician reaches in his MSS to the period of time which was under consideration by the ALJ.[2]

---

[2] Indeed, the Appeals Council's statement that the post-hearing evidence from Dr. Christensen relates to a later time is not entirely true, given the fact that one of the progress notes submitted to the Appeals Council is dated January 31, 2013. Although the Appeals Council does not mention that specific progress note in its denial order, there is no question that the Appeals Council had that note before it as it was making its decision, as it specifically listed that exhibit as evidence that it made a part of the record. *See* Tr. 6 (Order of Appeals Council stating that it has received Exhibit 14F ("Medical Records from E. Christensen, M.D. dated from August 2, 2012 to January 31, 2013") and that it was making those a part of the record).

But while the Commissioner's finding regarding chronological relevance missed the mark, there was no error in the conclusion that the MSS was not "material evidence." By definition, in order for evidence to be material there must be a reasonable possibility that the new evidence "would change the administrative result." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). In *Washington*, the Eleventh Circuit found that the opinion from Dr. Wilson was not only chronologically relevant but also material, rejecting the Commissioner's argument that Dr. Wilson's findings seven months after the ALJ's decision were not material because they contradicted the opinion of Dr. Nichols, a psychologist who examined the claimant to determine if he was disabled. 806 F.3d at 1321-22. The Eleventh Circuit found that both Dr. Wilson and Dr. Nichols examined, but did not treat, the claimant, and although the two doctors disagreed about the severity of the claimant's difficulties in maintaining social functioning, concentration, persistence, and pace, given that both Dr. Wilson and Dr. Nichols based their opinions on examinations, there is a reasonable possibility that a fact finder could credit Dr. Wilson's opinions over Dr. Nichols's. *Id.*

The same cannot be said here. Dr. Christensen had been treating Plaintiff on a regular basis (generally a visit every three months) since January 12, 2011, and the ALJ discussed Dr. Christensen's progress notes at length in his decision. (Tr. 243). Plaintiff consistently complained to Dr. Christensen of leg, arm, and back pain, and numbness in his hand, arms and shoulders. Dr. Christensen first diagnosed Plaintiff with chronic pain syndrome, depression/anxiety, insomnia, and hypertension, but later added degenerative disc disease of the cervical spine and cervical radiculopathy. (Tr. 230-45). However, as the ALJ noted, Dr. Christensen's progress notes on Plaintiff failed to document *significant* clinical abnormalities. They never documented back pain, joint pain, stiffness or swelling, muscle spasm, neck pain, limited range

of motion, difficulty walking, or sensory deficits; and instead they consistently noted normal appearance of the back as well as normal strength in the upper and lower extremities. (Tr. 221, 224, 227, 230, 232, 236, 238, 241, 245, 265, 268). The ALJ further noted that Dr. Christensen consistently reported Plaintiff had appropriate mood and affect; was alert and oriented to person, time, and place; and had intact judgment and insight. (Tr. 46, 227, 230, 232, 236, 238, 241, 245, 268). In addition to the clinical findings, as the ALJ noted, Dr. Christensen reported Plaintiff's condition had improved with medication. (Tr. 46). For example, on August 22, 2011, Dr. Christensen indicated Plaintiff was "feeling fine," did not have any complaints, was taking all his medications as prescribed, and was doing well on current dosages. (Tr. 45, 231). On February 27, 2012, Dr. Christensen indicated Plaintiff was taking all of his medications and was "doing well" on current medications and dosages. (Tr. 46, 225). On May 14, 2012, Dr. Christensen noted Plaintiff was "doing well" and did not have any complaints, he was taking all of his medications as prescribed, and was "doing well" on current medications and dosages. (Tr. 46, 222). On August 2, 2012, Dr. Christensen indicated Plaintiff was "doing well" and did not have any complaints, he was taking all of his medications as prescribed, and was "doing well" on his medications and dosages. (Tr. 46, 219). On November 2, 2012, Dr. Christensen indicated Plaintiff's medication and dosage were "working well" and he had no new complaints. (Tr. 263). In other words, Dr. Christensen's treatment notes over the years did not document the level of disabling limitations that he opined were present in his MSS submitted for the first time after the ALJ's decision.

    Nor did any of the consultative examiners document repeated neck pain or limited range of motion in Plaintiff's neck, and the ALJ discussed these opinions at length as well. (Tr. 45-46). Robert MacGregor, M.D., examined Plaintiff in February 2011. (Tr. 45, 181-84). Dr. MacGregor

observed Plaintiff was able to walk into the examination room without assistance, sit comfortably through the examination, and was able to get on and off the examination table without difficulty. (Tr. 182). Dr. MacGregor reported Plaintiff was able to walk, tandem walk and heel walk without difficulty; had 5/5 motor strength in the arms and legs including grip strength; and had no muscle atrophy, no sensory deficits, and normal reflexes. (Tr. 184). Paul W. Davis, Ph.D., performed a psychological examination in March 2011, and reported Plaintiff arrived on time; had normal rate of speech, rhythm, tone and volume; depressed mood; and no problems with memory. (Tr. 46, 190). Dr. Davis opined Plaintiff could remember instructions and respond appropriately to supervision, coworkers and work pressures in the work setting. (Tr. 190-91). The ALJ also discussed the examination performed by Bruce W. Romeo, M.D. on January 24, 2013, and gave great weight to Dr. Romeo's opinion. (Tr. 46-47, 247-62). On examination, Dr. Romeo reported no joint tenderness or swelling, no back spasms, normal gait, 5/5 motor strength, no sensory deficits, normal reflexes, 5/5 grip strength, negative straight-leg raising, and normal range of motion including the cervical spine. (Tr. 249, 251). X-rays of the wrist, neck, ankle, and back showed no abnormalities. (Tr. 253-56). Dr. Romeo opined Plaintiff could lift and carry up to one-hundred pounds occasionally and sit, stand or walk for eight hours in an eight-hour workday. (Tr. 257-58). Dr. Romeo found Plaintiff could perform reaching and manipulative activities on a continuous basis. (Tr. 259). The ALJ further considered the opinion of Samuel D. Williams, M.D., a psychiatrist, who reviewed a portion of the record and opined in April 2011, that Plaintiff could understand, remember and complete short, simple one-to-two-step tasks; complete more complex tasks if they are broken down into smaller, simpler sections to be completed; and complete an eight-hour workday. (Tr. 47, 194-210). The ALJ gave great weight to Dr. Williams' opinion. (Tr. 47).

The ALJ further noted Plaintiff's reported daily activities were inconsistent with his allegations of disability. The ALJ noted Plaintiff reported being able to ride a four wheeler and fish, and he had a driver's license and drove, took care of his dog and cat, prepared meals, did laundry, and shopped. (Tr. 45, 141-44).

Dr. Christensen's MSS is inconsistent with this objective medical evidence. Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting a treating doctor's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). An ALJ, however, may discount a doctor's opinion for good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when the (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Id.* Here, the ALJ had already indicated the objective evidence did not support Plaintiff's allegations of disability. Similarly, the lack of significant objective findings would not have supported Dr. Christensen's opinion of disability. The ALJ discussed in detail the record evidence, including findings from Dr. Christensen and other medical sources, as well as the opinion evidence from Drs. Romeo, Williams, and Davis. (Tr. 44-47). Dr. Christensen's opinion in his MSS would not have been supported by his own clinical findings and the other evidence in the record. As mentioned, the only clinical finding Dr. Christensen cited in his MSS opinion was a decreased range of motion in the cervical spine. (Tr. 28). This finding alone would not have supported Dr. Christensen's opinion in his MSS. This court concludes that the findings in the MSS are inconsistent with the objective medical evidence and with the record as a whole, and thus, if presented with the MSS, the ALJ would have given these findings little weight. Therefore, there is not a reasonable possibility that these new findings in the MSS would change the ALJ's non-

disability determination. Because the findings in the MSS are not material, the Commissioner's denial of benefits was not erroneous.

The court also notes that Dr. Christensen indicated in his MSS that Plaintiff was taking opioids which would prevent him from performing any full-time work. (Tr. 28). In *Washington*, the claimant had also presented evidence from another doctor, Dr. Tulao, for the first time to the Appeals Council, who had stated that the claimant was disabled. 806 F.3d at 1323. The Eleventh Circuit found that the Appeals Council did not err in refusing to consider Dr. Tulao's opinion because the Appeals Council was not required to consider an opinion of disability that post-dated the ALJ's decision since the issue of disability is reserved to the Commissioner. 806 F.3d at 1323 n.9. Indeed, the Eleventh Circuit has stated that in disability determinations "we are concerned . . . with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see* 20 C.F.R. § 404.1527(d)(1) (recognizing that an opinion on whether a claimant is disabled is not a medical opinion and reserving to ALJ the "responsib[ility] for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability"). As such, the Appeals Council properly refused to consider this aspect of Dr. Christensen's MSS.

## IV. Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the court finds the ALJ's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this March 31, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE